TEXAS & NEW ORLEANS RAILROAD COMPANY v. ALFRED BUCH, BY NEXT FRIEND.

Decided February 18, 1910.

**1.—Master and Servant—Authority of Brakeman—Charge.**

In a suit by a minor against a railroad company for damages for personal injuries caused by being forced by a brakeman to jump or fall from the ladder on the side of a freight car to which plaintiff was clinging, whereby plaintiff's feet were so crushed as to require amputation, charge of the court considered and held not subject to the objections (1) that it failed to require the jury to find, as a condition of plaintiff's right to recover, that the brakeman whose conduct caused the plaintiff to jump from the train was acting in the line of his duty; (2) that it assumed that the brakeman, if he in fact ejected the plaintiff from the train, did so in the line of his duty to defendant; (3) that the evidence did not raise the issue of whether said brakeman was authorized to expel the plaintiff; and (4) that it ignored the issue of contributory negligence plead by defendant.

**2.—Same—Rule by Master—Nonenforcement.**

The nonenforcement by the master of a rule of conduct for his servants will justify a finding that the rule had been abrogated.

**3.—Damages—Personal Injuries—Verdict not Excessive.**

A verdict for $9,500 in favor of a boy ten years old for the loss of both feet is not excessive.

Error from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Baker, Botts, Parker & Garwood* and *A. L. Jackson,* for plaintiff in error.

*Lovejoy & Parker,* for defendant in error.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by Ed. Buch, as next friend of his minor son, Alfred Buch, to recover damages for said minor for personal injuries alleged to have been caused him by the negligence of the Texas & New Orleans Railroad Company. The cause of action is alleged in plaintiff's petition as follows: "That on or about the 6th day of July, 1903, and long prior

thereto, it had been the habit, usage and custom of the defendant railroad company to carry small boys on its cars and engines to and from what is known as the creosote works, east of the city of Houston; that on said date, in accordance with such alleged custom, Alfred Buch and other boys had been riding back and forth on one of defendant's freight trains; that theretofore the defendant's employes had permitted the plaintiff and other boys to ride on its cars without protest, but that on this occasion, while Alfred Buch was on one of the cars, he was run off by one of defendant's switchmen or brakemen thereunto duly authorized, and as a result was caused to fall from the train while in motion and was run over and injured in such a manner as to require the amputation of parts of both of his feet, from which he suffered great physical pain and mental anguish, and had sustained permanent injury and impairment of his ability to work after he should reach the age of twenty-one years; that his injuries were directly and proximately caused and occasioned by the negligence and carelessness of the defendant, its servants, agents and employes, in that they negligently and carelessly, with force and arms, and by cursing, abusing and threatening him with violence, and by putting him in great fear, compelled plaintiff to jump off of said train, as aforesaid, and while the said other train was passing, or about passing, the same, and with full knowledge of the presence of said train and of the danger to which plaintiff was exposed of being run over by the wheels of the train to which he was clinging, and the wheels of the train then and there about to pass or passing; and that plaintiff was ignorant of the approach or passing of said train when he jumped from the one to which he was clinging, as aforesaid; that the plaintiff was a child, ten years of age, of immature judgment and discretion." Plaintiff prayed for judgment in the sum of $30,000.

The defendant answered by a general demurrer and general denial, and by special plea charging that plaintiff was a trespasser upon defendant's cars and premises at the time he was injured and was getting on and off the cars and train while the same was in motion, and that such conduct was negligence on plaintiff's part which directly contributed to his injury and relieved defendant from liability therefor. It is further specially denied by said answer that Alfred Buch on the occasion of his injury was upon the cars of defendant with its consent or by its express or implied invitation, or was ejected therefrom by the defendant or by any person authorized by the defendant to remove him from said cars or train.

The trial in the court below resulted in a verdict and judgment in favor of plaintiff in the sum of $9,500.

The undisputed evidence sustains defendant's plea that Alfred Buch at the time of his injury was a trespasser upon defendant's cars. He had neither an express nor implied invitation to go upon said cars. The boy testified, in substance, that he got on the moving train for the purpose of riding home, and that while his feet were on the lower rung of the ladder on the side of the car on which he was riding with his hands grasping an upper rung, a switchman or

brakeman who was on the top of the car ordered him to get off and cursed and abused him, and when he refused to leave the car the switchman started down the ladder toward him, still cursing him and ordering him off, and fearing that the switchman would tread on and mash his fingers he jumped from the car and was caught and run over by a train passing on another track. This testimony was corroborated by the testimony of a sister of plaintiff who saw the switchman start down the ladder and heard him abusing the plaintiff. At the time of his injury Alfred Buch was about ten years of age and was a boy of the average intelligence of those of his age.

This testimony as to how the injury occurred was contradicted by the testimony of members of the crew in charge of the train, but the jury were justified in believing it to be true and were authorized to find that the direct and proximate cause of plaintiff's injuries was the wrongful act of the switchman in forcing him to jump from the moving train. The undisputed evidence shows that when he jumped from this train he fell under a passenger train which was passing in an opposite direction upon a track within a few feet of the track on which the train from which plaintiff jumped was moving, and a large portion of both of his feet were cut off, or so badly injured as to require amputation.

The train upon which the plaintiff was riding was in charge of a switching crew and was being switched through defendant's yards to what is known as the creosote works in the city of Houston. The crew, besides the engineer and fireman, consisted of a foreman and two or three brakemen.

In support of its plea that the brakeman on defendant's train had no authority to eject trespassers therefrom, defendant introduced the following rule which it had duly adopted and published:

"Conductors are clothed with exclusive authority to eject persons from a train, either passenger or freight; they may call upon brakemen or other trainmen to assist them, but such brakemen or other trainmen have no authority to eject anyone, either passenger or trespasser, unless under the immediate directions and instructions of the conductor, the conductor being present, and under no circumstances must anyone be ejected or forced to leave the train while it is in motion."

It was also shown that the authority of the foreman of a switching crew was similar to that of a conductor of a freight or passenger train.

To avoid the effect of this rule plaintiff introduced the testimony of several of defendant's employes to the effect that it was the general custom of the brakemen of switching crews in defendant's yards to eject trespassers from trains being handled by such crews. There was no attempt on the part of the defendant to rebut the inference arising from this testimony, that if the rule as to conductors was intended to apply to foreman of switching crews it was habitually disregarded with the knowledge of the defendant and no attempt was made on defendant's part to enforce it.

This is the second appeal in this case, the opinions of the Court of Civil Appeals for the Fourth District and of the Supreme Court

on the former appeals are reported respectively in 102 S. W., 124, and 101 Texas, 200.

Except those hereinafter discussed all of the questions presented upon this appeal were raised on the former appeal and were decided adversely to plaintiff in error. The Supreme Court, in reversing the judgment of the Court of Appeals and remanding the cause because of an error in the charge which does not appear in the charge given upon the trial from which this appeal is prosecuted, expressly approves the conclusions of the Court of Appeals upon all of the remaining questions presented on that appeal.

These opinions upon the former appeals are conclusive of the questions presented by the first, second, third, fifth and eighth assignments of error presented on this appeal, and each of said assignments is overruled.

The fourth assignment complains of the following paragraph of the charge:

"If you believe from a preponderance of the evidence that the plaintiff, Alfred Buch, was riding upon the defendant's cars and hanging onto a ladder at the side of the said car and, whilst the same was in motion, the switchman of the defendant used violent and threatening language and conduct to such an extent that he put the said plaintiff in fear of bodily injury, and through such fear the said Alfred Buch let go of the rounds of the said ladder and fell from the said car, or attempted to jump from the said car, and was injured in the manner set forth in the plaintiff's petition by having his feet crushed and mangled by the wheels of either train, as alleged in the petition in this case; and if you believe from the evidence that the said switchman was authorized by the defendant, the Texas & New Orleans Railroad Company, to perform the duties that he did perform, and to expel trespassers on the said car from riding thereon; and you believe from the evidence that the act of the said switchman was the proximate cause of the injury to the plaintiff, Alfred Buch; and you believe a man of ordinary prudence would not have caused the plaintiff to leave the car at the time and place and under the circumstances he did, if you find he did that, then you will find for the plaintiff, and assess his· damages as hereinafter directed unless you find for the defendant under the following portions of this charge."

It is contended that this charge is erroneous, first, because it fails to require, as a condition of plaintiff's right to recover, a finding by the jury that the brakeman whose conduct and language caused plaintiff to jump from the train was acting in the line of his duty and with the purpose of ejecting plaintiff from said train; second, because it assumes that the brakeman, if he in fact ejected plaintiff from the train, did so in the line of his duty to the defendant; third, because the evidence did not raise the issue of whether said brakeman was authorized to expel plaintiff from the train, and therefore such issue should not have been submitted to the jury; and fourth, because it ignores the issue of contributory negligence pleaded by the defendant.

There is no merit to any of these objections to the charge. If the plaintiff's testimony as to the brakeman's conduct was believed by

the jury, there could be no question that he intended by his language and acts to force plaintiff to leave the train, and the issue of whether he so intended is not raised by the evidence. The charge does not assume that the brakeman was acting in the line of his duty and authority when he ejected plaintiff from the train, but submits that issue to the jury, and we think the evidence is amply sufficient to sustain the finding that the brakeman was authorized to eject trespassers from the train. The court having instructed the jury that plaintiff was a trespasser upon defendant's train, the issue of contributory negligence was concluded in defendant's favor, and it can not complain that such issue was not submitted to the jury.

There was no error in refusing special charge No. 12 requested by the defendant, the refusal of which is complained of by the sixth assignment of error. The main charge and special charge No. 9, given at the request of defendant, properly submits the issue sought to be submitted by the refused charge.

The seventh assignment complains of the charge of the court in submitting the issue of whether it was the habit and practice of the brakemen in defendant's yards to eject trespassers from trains, on the ground that such issue is not raised by the pleadings nor by the evidence. Plaintiff was not required to plead such custom in answer to defendant's plea denying the authority of the brakemen. As we have before said, the evidence shows that it was the general custom and practice for brakemen of switching crews in defendant's yards to eject trespassers from trains being handled by such crews, and the jury were authorized from the evidence to find that defendant knew of such custom and acquiesced therein; and if the rule proven by the defendant was ever intended to apply to switching crews (and it may well be doubted whether the evidence is sufficient to sustain the finding that it was so intended), the jury were justified in concluding that defendant by nonenforcement had abrogated such rule in so far as it applied to switching crews. The assignment is without merit.

The ninth assignment can not be sustained. There being no evidence in support of the allegations of the petition that defendant's employes were in the habit of allowing boys to ride on trains being switched to and from the creosote works, and the court having instructed the jury that the plaintiff was a trespasser upon defendant's train, it was unnecessary to further instruct them to disregard said allegation.

The tenth assignment complains of the verdict as excessive. The evidence shows that plaintiff was about ten years of age at the time of his injury. One of his feet was cut off at the instep, and at least one-half of the other foot below the instep, including the big toe, is also gone. Notwithstanding these injuries, he walks and runs with apparently little difficulty, but the evidence shows that he will never be as active as he would have been, and will never be able to stand on his feet and do the work of an able-bodied man; that such walking will always tire him, and the front portion of his feet being gone he will always have a tendency to fall forward when walking.

It was also shown that he suffered greatly from his injuries for several months. Upon this evidence we can not say that the verdict is so large as to indicate passion or prejudice or any motive on the part of the jury, other than a desire to give fair compensation for the damages sustained.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

### ON MOTION FOR REHEARING.

In the motion for rehearing filed by appellant our attention is called to several inaccurate statements of fact in our opinion heretofore filed in this cause.

The statement in the opinion that plaintiff's testimony was corroborated by the testimony of his sister "who saw the switchman start down the ladder and heard him abusing plaintiff," is not accurate. The sister did not state that she heard the switchman abuse the plaintiff. Her statement is that she saw the switchman go down the ladder upon which her brother was riding and "heard him say something but could not understand what he was saying."

The following statement in the opinion is also inaccurate: "The undisputed evidence shows that when he (plaintiff) jumped from the train he fell under a passenger train which was passing in an opposite direction upon a track within a few feet of the track on which the train from which plaintiff jumped was moving, and a large portion of both of his feet were cut off, or so badly injured as to require amputation."

The undisputed evidence does not show that plaintiff jumped or was forced from the train by the switchman, nor that his feet were caught under the wheels of a train passing upon another track. There was evidence to the effect that the motion or jerk of the train caused plaintiff to lose his grasp of the ladder and that he fell under and was injured by the train on which he was riding. The use of the word "undisputed" in the paragraph of the opinion above quoted is only accurate when applied to the evidence as to the nature and extent of appellee's injuries. No question is made on this appeal as to the sufficiency of the evidence to sustain the finding that plaintiff was made to leave the train by the switchman and that in getting off he fell under the wheels of a passing passenger train, and our error in stating that the evidence upon these issues was undisputed is not material.

The statement in the opinion that the train "was being switched through appellant's yards to what is known as the creosote works in the city of Houston" is inaccurate in that the record does not show that it was switched through appellant's yards, and the creosote works are three or four miles from the yards and not within the city limits. The only material fact included in this finding is that the train was in charge of a switching crew and its movement was for switching purposes, and these facts are undisputed.

The only testimony as to the custom of brakemen or switching crews in defendant's yards to eject passengers from trains being

handled by such crews, was that of the witness Tom Scanlan, who had been a switchman, or foreman of switching crews, in said yards for five years preceding the plaintiff's injury, and who testified that, "Anyone in the crew would put trespassers off; that has been the custom all the time I have been there, and I know what the practice is over there;" and the witness Morrow, who was also a switchman in said yards at and before the time of plaintiff's injury, and who testified: "It has been a practice of mine all my life when I see boys jumping or climbing around cars to chase them away for humanity's sake, if for nothing else. The company did not permit boys to ride on the cars and they expected us to keep them off."

The motion for rehearing has been duly considered, and we see no reason for changing our former opinion affirming the judgment of the court below.    Overruled.

*Affirmed.*

Writ of error refused.